IN THE UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO

LETICIA TREVINO,

Plaintiff,

v. case no. ________________

SAM LALLOUZ and PREMIUM MERCHANT FUNDING ONE LLC,

Defendants

**COMPLAINT FOR VIOLATIONS OF THE UNFAIR PRACTICES ACT AND THE TELEPHONE CONSUMER PROTECTION ACT**

TO THE HONORABLE COURT:

1. Plaintiff Leticia Trevino ("Plaintiff") is a real person who may be contacted through her undersigned attorney. Plaintiff brings this action in accordance with the anti-harrassment provisions of Section 22 of the New Mexico Unfair Practices Act ("the UPA") and the federal Telephone Consumer Protection Act ("the TCPA")

2. Section 22 of the UPA is intended to protect consumer privacy by prohibiting certain phone calls, and to provide for transparency by requiring that telemarketers identify themselves and who they are calling for during the calls. The TCPA is of similar design

3. The TCPA and the FTC's Telemarketing Sales Rule ("the TSR") established the National Do-Not-Call Registry ("the Registry"). The Registry allows people to list their telephone numbers and thereby indicate their instructions to NOT receive telephone solicitations. Telemarketers are

required by law to subscribe to and comply with the Registry. NMSA § 57-12-22(C); 47 U.S.C. § 227(C); 16 C.F.R. Part 310; 47 C.F.R. § 64.1200(c)

4. The UPA and the TCPA each established private rights of action to recover statutory damages for unlawful telephone solicitations and for violations of the Registry's implementing regulations[1]

5. Venue is proper because Plaintiff is a resident of Dona Ana County within the State of New Mexico. This Court has subject matter jurisdiction based on a federal question and supplemental jurisdiction over state law claims pursuant to 28 USC §§ 1331 and 1367. *Mims v. Arrow Fin. Servs., LLC,* 132 S. Ct. 740 (2012)

6. The Court has personal jurisdiction because Defendants do business in New Mexico. Defendants and/or their agents regularly, repeatedly telephone the phones of New Mexicans located within New Mexico for the purpose of advertising products and services. Defendants authorized and approved telemarketing to sell products and services throughout the State of New Mexico. By directing telemarketing phone calls into the forum state, Defendants made themselves subject to the specific personal jurisdiction of the courts of the forum state

7. Defendants at the times described in this Complaint controlled or ratified standardized telemarketing that targets consumers nationwide, including the telemarketing the subject of this Complaint. Some of Defendants' telemarketing was purposefully directed into the State of New Mexico at New Mexico residents, but it is all the same standardized telemarketing that is directed

---

1. The FCC has defined "robocalls" as "calls that require consumer consent", including "calls made either with an automatic telephone dialing system ("autodialer") or with a prerecorded or artificial voice". *Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG Docket No. 02-278, Declaratory Ruling and Order released on 7/10/15, 30 FCC Rcd. 7961 ("FCC 15-72"), footnote 1

by Defendants into every part of the United States. As a result of Defendants' standardized telemarketing the subject of this Complaint, Plaintiff suffered the concrete harms and injuries from that telemarketing for which the TCPA and the UPA provide remedies

**Defendants and their Unlawful Telemarketing conspiracies**

8. Defendant SAM LALLOUZ ("Lallouz" or "Defendants") is a resident of New York who should be served a Summons at 55 Water St, New York, NY 10004 or wherever he may be found

9. Defendant Premium Merchant Funding One LLC ("Premium" or "Defendants") is a New York limited liability company that should be served a Summons by delivery to its manager Lallouz or by alternate service on the New York Secretary of State in accordance with applicable New York law

10. Lallouz has created a network of inter-related companies and people all dominated and controlled by him, and designed so that different companies or persons can be used by Lallouz to perform distinct tasks required to be conducted for the sale by telemarketing of various products and services. These tasks include for example without limitation finding vendors and other fulfillment services, account billing and payment processing, lead-generation, compilation and distribution of lead lists, recruiting and training telemarketers and compensating the marketers. Premium is among this group of companies and/or persons inter-related by common ownership and/or control, who were Lallouz's agents he used to commit the acts and omissions complained of by Plaintiff as set forth below

11. Lallouz establishes, controls, directs, operates or otherwise contracts for telemarketing and call-centers that engage in automated, mass, out-bound telemarketing. Lallouz is well-aware or should be well-aware of all the laws, rules and regulations that apply to telemarketing, because

Premium has repeatedly been sued for unlawful telemarketing in state and federal courts across the country

12. Lallouz approves and controls contracts and agreements for telemarketing and authorizes and controls payments to the persons who make the actual telephone solicitations. Lallouz designs, controls and approves standardized telemarketing messages and sales processes directed at consumers including those to Plaintiff as described below

13. Lallouz compiles or purchases lists of random phone numbers to call then directs or controls others including including Premium to start telemarketing to all those phone numbers

14. Lallouz has implemented and controls an operating system that can track sales of various products by telemarketing, whereby the actual telemarketers involved will be incentivized to market because they know they will receive commissions or other compensation on sales

15. Lallouz acquires and passes out to his co-conspirators various phone numbers used in the telemarketing, whereby he knows which particular telemarketer is credited with any given sale based on the phone numbers used in the telemarketing that resulted in that sale

16. Defendants give each other access to Defendants' internal operating systems (such as their CRM-systems), for use by themselves and their agents in making sales for Defendants, so Defendants can engage in sales-tracking and know which particular co-conspirator is owed a commission for any given sale. Consequently, Defendants also are made aware which co-conspirators are generating numerous sales within short time-periods, so numerous and in so short a time period that it puts Defendants on notice particular persons commenced a telemarketing campaign that requires compliance with the TCPA and 16 C.F.R Part 310 (the Telemarketing Sales Rule ("TSR")). Moreover, Defendants tell each other how they are marketing, and actually direct and require that their co-conspirators telemarket in an unlawful manner

17. All the while engaging in the foregoing conduct, Defendants have failed to adopt and implement the business policies and practices required by 47 C.F.R. § 64.1200**(d)**

18. Defendants intentionally use telemarketing because it allows for thousands of automated sales calls to be initiated in a very short period of time, but their sales representatives only need actually spend time on the phone with consumers who respond positively. Defendants thereby unlawfully shift the cost of aggravation and wasted time to the public at large and away from themselves where it belongs

19. Defendants, at the same time that they control, direct, supervise and implement telemarketing including that unlawfully directed at Plaintiff and into the State of New Mexico, do not require any of their marketers or co-conspirators to subscribe to or comply with the Registry. Defendants consciously avoid knowing whether any marketer subscribes to or complies with the Registry. Defendants consciously avoid knowing whether any marketer complies with 47 C.F.R. § 64.1200**(d)**

20. Defendants know their telephone solicitations are targeted to residential cell-phones because Defendants rely on smart-phone or internet-connected devices for interested consumers to access text-message linked landing pages where they can buy Defendants' products or services

21. Mass-telemarketing to phone numbers listed on the Registry results in consumer complaints. Many of the consumers called call back at the phone numbers they receive in Defendants' telemarketing, specifically to complain about Defendants' unlawful telemarketing

22. Based also on the numbers of consumer complaints to and about their telemarketers, Defendants had an actual awareness or should have had an actual awareness that their agents actually making or initiating the telephone solicitations, including the solicitations to Plaintiff

described below, telephone people who object to the calls, to people who did not consent to them, and to people whose telephone numbers are listed on the Registry

23. Minimal oversight by Defendants would have confirmed for them that the telemarketing done on Defendants' behalf was done without complying with the TCPA or the TSR

24. Defendants gave and continued to give substantial assistance or support to their co-conspirators and themselves while knowing, consciously avoiding knowing or being recklessly indifferent to the fact that they are all engaged in unlawful telemarketing acts or practices

**the Unlawful Phone Calls to Plaintiff that Defendants are Responsible For**

25. Plaintiff's telephone is a wireless or cell phone assigned the phone number 915-471-3564. Plaintiff uses this phone and her assigned phone number in New Mexico for her personal, household and residential purposes such as communications with friends and family and arranging for and scheduling health-care and other household needs

26. Plaintiff's phone number 915-471-3564 has been continuously listed on the Registry since 12/18/2004

27. During the past twelve-months preceding the filing of this Complaint, Defendants or their agents have repeatedly made telephone solicitations to Plaintiff's cell phone and phone number referred to above

28. Defendants' calls the subject of this Complaint were telephone solicitations because they sought to interest Plaintiff in obtaining a loan either from Defendants or via Defendants' brokerage services

29. After repeated telephone harassment by Defendants or their agents, and solely for the purpose of accurately identifying Defendants, Plaintiff's spouse on her behalf engaged with Defendants during one of the telephone solicitations

30. Defendant's agent directed Plaintiff to a website to submit a loan application and in addition sent Plaintiff's spouse email

31. The website Plaintiff was directed to indicated that, for help or support, the reader should contact Premium via www.pmfus.com

32. Defendant's agent was directly asked "Is your company affiliated with Premium Merchant Funding?" Defendant's agent replied in the affirmative and in addition stated "We use the same CRM"

33. Defendants own, operate and control the website www.pmfus.com

34. Plaintiff then specifically instructed the caller to not call or contact her phone number again, but Defendants' calls continued even after this company-specific do-not-call request

35. Plaintiff never gave prior express written consent to receive telephone solicitations from Defendants or their agents

36. Plaintiff never had any prior relationship with Defendants or their agents

37. Defendants' telephone solicitations complained of herein aggravated and harrassed Plaintiff, wasted her time, invaded her privacy, disrupted her days and cost her money for electricity to re-charge her phone

38. For over 30 years now the FCC has made clear that "the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." 10 F.C.C. Rcd. 12391, 12397 ¶ 13 (1995). *In the Matter of the Joint Petition Filed by Dish Network, LLC*, 28 F.C.C. Rcd. 6574 (2013). *Mohon v. Agentra LLC*, 400 F.Supp.3d 1189, 1226 (D. NM 2019). The FCC has rejected a narrow view of liability, including the assertion that liability requires a finding of formal agency and immediate direction and control over the third-party who placed the telemarketing call. *Id.*

39. Defendants do not evade liability by outsourcing telemarketing:

> "[A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to ***unsupervised third parties*** would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were *judgment proof,* ***unidentifiable****, or located outside the United States, as is often the case*. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain effective relief. As the FTC noted, because "[s]ellers may have thousands of 'independent' marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy."

May 2013 FCC Ruling, 28 FCC Rcd at 6588 (¶ 37) (internal citations omitted).

40. Defendants are either directly liable for the telephone solicitations at issue because they made or initiated them, or Defendants are vicariously liable because they:

a) authorized the calls or caused them to be made;

b) controlled the persons who actually made or initiated the called;

c) allowed the telemarketers access to information and operating systems within Defendants' control for the purpose of selling goods and services, without which they would not be able to sell;

d) allowed the telemarketers to enter or provide consumer information into Defendants' sales or operational systems;

e) approved, wrote, reviewed or participated in developing the telemarketing sales scripts and messages;

f) Defendants reasonably should have known or consciously avoided knowing that the actual telemarketers were violating the law and Defendants failed to take effective steps within their power to require compliance; OR

g) Defendants gave substantial assistance or support to their agents while knowing, consciously avoiding knowing, or being recklessly indifferent to the fact that the agents were engaged in acts or practices that violated the TCPA and/or the TSR.

41. Defendants ratified the unlawful calls to Plaintiff described above because Defendants accepted and intended the benefits to themselves of the telemarketing while knowing or consciously avoiding knowing the calling was unlawful.

## FIRST SET OF CLAIMS FOR RELIEF - UPA Violations

42. Plaintiff hereby brings this action pursuant to the New Mexico Unfair Practices Act ("the UPA") to recover her statutory damages for each violation of the UPA, for injunctive relief and for her attorney fees. As set forth above Defendants' conduct was knowing and/or willful therefore Plaintiff should be awarded treble her statutory damages

43. Defendants' calls violated NMSA §57-12-22(C)(1). Plaintiff should be awarded $300 for each of these violations

44. Plaintiff is likely to be damaged by Defendants' telemarketing in the future. Therefore and in accordance with NMSA §57-12-10A Plaintiff hereby requests Judgment for the following injunctive relief:

- Order that Defendants shall personally subscribe to and comply with the National Do Not Call Registry at all times, and Defendants shall require proof from their telemarketing agents and lead-generators that Defendants' agents and lead-generators themselves actually subscribe to and comply with the National Do Not Call Registry at all times
- Order that Defendants shall train and actually supervise their agents for telemarketing compliance, including the requirement that sellers and sponsors of the calls be adequately identified during the calls themselves.

SECOND SET OF CLAIMS FOR RELIEF - Violations of the TCPA's Subsection C

45. Defendants or their agents on Defendant's behalf made telephone solicitations to Plaintiff more than once within 12 months despite the fact her phone number Defendants or their agents called has been continuously listed on the Registry at all relevant times

46. For each of Defendants' calls to Plaintiff the subject of this Complaint, Plaintiff should recover up to an additional $1500

47. Each time Defendants or their agents called Plaintiff, they had also failed to comply with 47 C.F.R. § 64.1200**(d)**. Plaintiff should recover up to an additional $1500 for each violation of 47 C.F.R. § 64.1200**(d)**

WHEREFORE, Plaintiff prays for entry of judgment for - her statutory, actual and/or treble damages sufficient in size to set an example and deter in the future the conduct complained of by Defendants or others. Plaintiff requests an award of her attorney fees and costs. Plaintiff prays for such other and further relief as the court finds proper including injunctive relief

RESPECTFULLY SUBMITTED,

By: ______________________

Sidney P. Childress, Lawyer
1925 Aspen Dr. #600A
Santa Fe, NM 87505
childresslaw@hotmail.com
(505) 433 - 9823
Attorney for Plaintiff